## ENTELMAN *et al.* v. HAGOOD.

1. Whatever may have been, at common law, the right of a landlord with respect to removing, without resort to legal proceedings, a tenant holding beyond his term, in view of the statutes of this State providing for the summary ejection of tenants under legal process, and the public policy thereby manifested, a landlord who, without such process, forcibly and violently ejects a tenant and his personal goods from the rented premises is liable to the latter in an action of trespass, although the tenant was holding over beyond his term, was in arrears for rent, and had received legal notice to quit.

2. The verdict, in view of the evidence, being contrary to the law as above announced, and the court having expressly, for this reason, granted a new trial, the judgment will not be disturbed.

February 5, 1895.

Action of trespass.    Before Judge MacDoNELL.    City court of Savannah.    May term, 1894.

R. R. RICHARDS, for plaintiffs in error.
P. M. RUSSELL and A. C. WRIGHT, *contra.*

LUMPKIN, Justice.

1. Mary M. Hagood brought an action of trespass against Entelman and another, for forcibly ejecting her and removing her goods from certain premises which she had rented from Entelman, and of which she was still in possession.    Under the charge of the court, which was adverse to the plaintiff's right to recover, there was a verdict for the defendants.    A new trial was granted, the court being of the opinion, after further consideration, that even if the plaintiff was a tenant holding over after the expiration of her term, and after legal notice to vacate the premises, she could not be forcibly dispossessed by the landlord without subjecting the latter to an action of trespass, he having an appropriate remedy for her summary dispossession under section 4077 *et seq.* of the code.

The case therefore turns largely upon the question, whether or not a landlord may, without resort to legal proceedings, forcibly eject a tenant holding beyond his term, without becoming liable to the tenant in an action of trespass.    It would seem that at common law the landlord had the right, after the expiration of the tenant's term, to immediately re-enter and take possession of the rented premises, and that in so doing a resort to force was legal, provided no more force was used than was actually necessary to eject the tenant.    It is manifest, however, that proceedings of this kind would have a tendency to cause breaches of the peace; and, in this country especially, it is more than probable that they would frequently result from attempts by landlords to forcibly evict tenants who were unwilling to peaceably

and quietly surrender possession of premises. Cases of this kind bear some analogy to those in which owners of personalty, of which others are unlawfully in possession, undertake to repossess themselves of the same without the aid of the law. The act of 1821 (Cobb's Dig. p. 590) provided a remedy by possessory warrant for the speedy recovery of personalty; and, as appears from the preamble of that act, one of the purposes of its passage was to prevent violence and quarrels and bloodshed. This was, to some extent at least, indicative of the public policy of this State to preserve peace and tranquillity, by providing a legal remedy which would render it unnecessary for persons to undertake with their own hands the redress of wrongs inflicted by unlawfully depriving them of their chattels; and we are of the opinion that the same policy actuated the General Assembly, at least to some extent, in providing the remedy for recovering possession of real estate, now embodied in the above cited sections of the code. In view of that remedy, there is now no need for a landlord to use personal force to accomplish the summary ejection of a tenant who no longer has a right to occupy the rented premises. The legal remedy is full, ample and capable of speedy enforcement, and one of its objects must have been to prevent landlords from resorting to personal force to regain possession of their property.

In Fox v. Brissac, 15 Cal. 223, Baldwin, J., after stating that the early English authorities asserted the right of the landlord to enter for a breach of covenant in the lease and forcibly eject the tenant, adds : " But modern decisions, and the reason and policy of the law, are opposed to it. (See 4 Kent, 199 ; Taylor's Landlord and Tenant, §531; Sampson v. Henry, 11 Pick. 379.) The law gives ample redress and a summary process for the vindication of the rights of the landlord in such instances; and no more reason is perceived for allowing

this extraordinary mode of redressing personal grievances in the case of real estate than in the case of chattels.   To hold the doctrine contended for, would be of dangerous tendency, and lead to breaches of the peace and oppression."   The language just quoted coincides aptly with what has already been said above.   In Gear's Land. & Ten: §177, it is remarked that the common law right of forcible expulsion of the tenant is superseded in some of the States by statutes of forcible entry and detainer.   Accordingly it has several times been held in Illinois, that the common law right to enter and use all necessary force to obtain possession of the premises from one who may wrongfully withhold the same, has been taken away by the statute of forcible entry and detainer of that State.   See Reeder et al. v. Purdy et ux., 41 Ill. 279; Jasper et al. v. Purnell, 67.Ill. 358, and Westcott v. Arbuckle et al., 12 Ill. App. 577.   Again, in Brock v. Berry, 31 Me. 293, it was held that, in case of a tenancy at sufferance of a house and lot, the landlord was chargeable in trespass *quare clausum fregit*, if he entered by force to the injury of the tenant or his family, even after two months verbal notice to quit.   We also have a statute of forcible entry and detainer, which is available for the purpose of ejecting those who, without right, take possession of the lands or tenements of another. Code, §4085 *et seq.*   But the remedy peculiarly appropriate for the expulsion of tenants holding over is that laid down in §4077 *et seq.*, already mentioned.

The question with which we have been dealing is not, we are frank to say, absolutely free from doubt; but after careful reflection, we believe we have adopted the safer course in holding as announced.

2. Assuming that our view is the proper one, a verdict in this case in favor of the plaintiff could have been sustained, and we think the trial judge was right in granting a new trial, and that he gave the correct reason for so doing.                    *Judgment affirmed.*