## 50330. STRICKLAND et al. v. HODGES.

CLARK, Judge.

Is there an independent right of action available to parents who are not present at an incident in which serious injuries are inflicted upon their child by the wilful and wanton negligence of a defendant so as to allow recovery for emotional distress and mental suffering which results from the parents learning of such injuries and seeing the injured child following the incident?

That question of first impression confronts us in this appeal by the parents from the grant of defendant's motion for partial summary judgment. This ruling struck from a three-count complaint those two counts which sought damages based upon "great emotional distress" suffered from their learning that their eleven-year-old daughter had sustained serious injuries from a collision between an automobile driven by defendant while admittedly under the influence of intoxicants and a car in which the child was a passenger riding with other relatives. The parents were not present. There remains a single count by the father for medicals and loss of services with which this appeal is not concerned.

"The thrust of this appeal deals primarily with the problem of whether there is an independent cause of action for emotional harm suffered by a parent upon learning of the injury and the extent thereof to such child when (1) such injury resulted from the wilful and wanton negligence of the defendant; (2) the parent was not a witness to the incident causing such injury; (3) the parent was not nearby when the child was injured; (4) there was no impact to the plaintiff; (5) the negligent acts of the defendant were 'directed toward' the child and not the plaintiff and (6) the parent learned of the injury a short time afterward and then suffered emotional harm" (Appellant's first brief, page 7).

In an excellent and learned brief citing both foreign and Georgia decisions appellant's able and articulate advocate seeks to persuade this court to create such right of action. He points out that in dealing with negligent infliction of emotional distress the various jurisdictions have devised three theories under which defendants have

been held liable to bystanders. These carry the appropriately descriptive names of "impact," "zone of danger," and "fear for another" rules.

As the nomenclature indicates, the "impact rule" required that defendant's negligent conduct result in actual bodily contact to the plaintiff. Excepting for special situations discussed hereafter, Georgia follows this doctrine. *Blanchard v. Reliable Transfer Co.*, 71 Ga. App. 843 (2) (32 SE2d 420); *Kuhr Bros., Inc. v. Spahos*, 89 Ga. App. 885, 890 (4) (81 SE2d 491). Thus, in *Southern R. Co. v. Jackson,* 146 Ga. 243 (91 SE 28), a mother crossing railroad tracks was permitted to sue for her personal injuries sustained in a fall while avoiding the approaching engine operated in a grossly negligent manner, but in the second headnote our Supreme Court held that "the fact that she witnessed the mangling of the child and became frightened and suffered a severe nervous shock therefrom would not entitle her to a recovery." See the annotation on this subject in 29 ALR3d 1337 where the writer at page 1344 comments that on this subject "the authorities are in a state of dissension probably unequaled in the law of torts."

While recognizing these Georgia authorities to be controlling in a "negligence" situation appellants' counsel urges that these cases should not be applied to a factual setting based on "wilfulness and wantonness." He argues that our court should hold that "When a defendant acts in such a wilful and wanton manner and in complete disregard of the rights of others . . . he is thereby precluded from raising the question of foreseeability of causing emotional shock and distress to the parents of a child injured in such an incident." (Appellant's first brief, page 17). In support of this proposal he cites these California and Hawaii decisions: Dillon v. Legg, 68 Cal. 2d 728 (441 P2d 912, 69 Cal. Rptr. 72) (1968); Archibald v. Braverman, 79 Cal Rptr. 723; Rodrigues v. State, 52 Haw. 174 (472 P2d 509) (1970); and Leong v. Takasaki, 55 Haw. 398 (520 P2d 758) (1974).

A reading of the California cases shows their decisions were based upon both the "zone of danger" rule, which permits recovery when it was foreseeable that the plaintiff would be in the area of possible physical peril

when the negligent act occurred, and the "fear for another" rule. Thus in the Dillon case a mother was given legal standing to sue when she witnessed her daughter being run over by defendant's car and in the Archibald case the mother arrived at the scene minutes after the accident occurred. But, as is pointed out in the appellee's brief, the most recent decision by a California appellate court, Powers v. Sissoev, 39 Cal. App. 3d 865 (114 Cal. Rptr. 868) refused to extend this doctrine to a mother who was not at nor near the scene of the accident when her child was hurt, the emotional harm occurring when she was notified by telephone of the accident and went to see her daughter 30 to 60 minutes later.

Similarly, a recent decision by the Supreme Court of Hawaii limited the extent of the cases cited by appellant in a situation factually akin to that before us. In Kelley v. Kokua Sales and Supply, Ltd., 532 P2d 673, a grandfather in California sustained a fatal heart attack upon learning by long distance telephone from Hawaii that his daughter and granddaughter had died as a result of an automobile accident. Despite a strong dissenting opinion based on the "zone of danger" doctrine and foreseeability as previously applied in the cited Hawaiian cases, the majority drew a restrictive line. The majority noted that without a reasonable and proper limitation of the scope of the duty of care owed by defendants, motorists would be confronted with an unmanageable, unbearable and totally unpredictable liability. Quoted with approval was this statement from Prosser, Law of Torts § 54 at 334 (4th Ed. 1971): "It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one man were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as his friends."

Pragmatic reasoning similar to that expressed by Prosser has been the basis on which most jurisdictions have refused to impose liability in parent absentee situations such as we have here. Thus the Court of Appeals of New York in Tobin v. Grossman, 24 NY2d 609 (249 NE2d 419) (1969) based its refusal to accept the "zone of danger" doctrine on practical factors. Among those

discussed in that opinion are the problem of limiting foreseeability which could "extend logically to caretakers other than the mother, and ultimately to affected bystanders," (p. 422), the possible proliferation of claims, and the problems both of unlimited and unduly burdensome liability. Cogent is the court's statement that "The final and most difficult factor is any reasonable circumscription, within tolerable limits required by public policy of a rule creating liability. Every parent who loses a child or whose child of any age suffers an injury is likely to sustain grievous psychological trauma, with the added risk of consequential physical harm." P. 423. The New York court noted that these factors have led the majority of the courts to refuse to extend the duty of the negligent actor to cover the mother of the small child despite the textwriters and commentators generally taking a contrary view. Logical and reasonable indeed is the New York court's conclusion that "The problem for the law is to limit the legal consequences of wrongs to a controllable degree . . . It is enough that the law establishes liability in favor of those directly or intentionally harmed." P. 424.

Our Georgia decisions have permitted recovery for emotional distress without physical impact under circumstances where the wilful act was directed towards the plaintiff. Thus, a defendant was held liable for "emotional suffering, unaccompanied by injury to purse or person" for abusive language directed towards the affected individuals. *Dunn v. Western Union Tel. Co.,* 2 Ga. App. 845 (59 SE 189); *Digsby v. Carroll Baking Co.,* 76 Ga. App. 656 (47 SE2d 203). It was the absence of this element of being "directed towards the individual plaintiff" which was the basis of other decisions holding that without a showing of physical injury there was no cause of action for emotional harm. Thus *Goddard v. Watters,* 14 Ga. App. 722 (82 SE 304) ruled that a pregnant wife who was inside the house when defendant assaulted her husband did not have a cause of action. Similarly, in *Pettett v. Thompson,* 33 Ga. App. 240 (125 SE 779) the defendant's general demurrer was upheld "for the reason that no wilful or wanton negligent act *directed against the plaintiff* is alleged." (Emphasis supplied).

Similar holdings are *Hamby v. Edmunds Motor Co.,* 80 Ga. App. 209 (55 SE2d 743) and *Towler v. Jackson,* 111 Ga. App. 8 (140 SE2d 295).

Although the New York case of Tobin v. Grossman, *supra,* involved only ordinary negligence, we are impressed with the practicality of the reasoning contained in that opinion and regard its logic to be applicable to the instant situation involving wilfulness and wantonness. To those reasons and that logic must be added the philosophy inherent in the cited Georgia decisions which require the plaintiff to show that the malefactor's act serving as the basis for the suit must be directed towards the complainant. This is particularly true as to the holding in *Southern R. Co. v. Jackson,* 146 Ga. 243, supra, which denied damages to a mother who witnessed the mangling of her child resulting from defendant's gross negligence. Finally—and the overwhelming—factor is that our law already gives the injured child her right to damages for her injuries, including punitive damages, and gives the father the right to recover medical expenses and loss of services.

Accordingly, we answer in the negative the question stated in the first paragraph of this opinion.

*Judgment affirmed. Pannell, P. J., and Quillian, J., concur.*

Argued March 10, 1975 — Decided May 29, 1975.

*Verlyn C. Baker,* for appellants.
*Dennis & Fain, Thomas S. Carlock, Mike Gorby,* for appellee.