68320. ORKIN EXTERMINATING COMPANY v. BOWEN.
(324 SE2d 752)

DEEN, Presiding Judge.

Robert Bowen brought a negligence action against Orkin Exterminating Co. for failure to treat his home properly for wood borers and received a judgment of $27,000 in actual damages and $73,000 in punitive damages. After trial, but before the time for filing a motion for a new trial had run, Bowen discovered that Orkin had wilfully concealed a subpoenaed witness. The appellee was apparently satisfied with the judgment as he did not move for a new trial. Instead, he chose to bring the instant lawsuit contending that when the witness failed to appear at trial and the court ordered the sheriff to locate him, an Orkin employee was instructed to lie as to his whereabouts. He claimed Orkin's actions denied him his right to a fair trial and injured his peace, happiness and feelings. The jury verdict awarded Bowen $75,000 and Orkin appeals contending Bowen failed to prove the requisite harm to withstand its motions for a directed verdict and for a judgment notwithstanding the verdict. *Held*:

The evidence showed that Bowen's attorney entered into a pretrial agreement with Orkin's counsel that it would not be necessary for appellee to issue a second subpoena for the attendance of Carl

Whorley, an Orkin employee, because his subpoena would serve for both parties. After the first day of trial, appellant's counsel felt that appellee had failed to prove its case because of the absence of an expert witness and that without such a witness a directed verdict would be demanded. This information was conveyed to William Wilt, Orkin's District Manager, and Wilt was put in charge of handling Whorley. The next morning, Whorley went to Orkin's Savannah branch office and was informed by the local managers, Wilt and Cliff Shaw, that he was not to go to court. Instead, he was to remain at the office until notified by them. When appellee's attorney called Whorley as a witness, he was not present and the court ordered the sheriff to locate him. Wilt was present in the courtroom assisting in the trial of the case, but remained silent as to Whorley's whereabouts. The sheriff later reported he had contacted Orkin and was informed by the receptionist that Whorley was in another county and could not be located because he did not answer his beeper. Whorley testified that the sheriff called the Orkin office twice while he was sitting in it in front of the receptionist and that she lied to the sheriff. The receptionist testified that she contacted appellee's attorney after trial and informed him of her misrepresentations to the sheriff and that she had made them on instructions from Cliff Shaw. When Whorley became upset because he feared a contempt citation, he talked with Shaw about reporting to the courthouse and was informed that he would be fired if he left the office and was instructed that he could neither make nor receive telephone calls except from Wilt. Shaw also offered Whorley the key to Wilt's motel room "if things got hot around the office." Wilt returned to the office during the lunch recess and talked to Shaw and Whorley about the situation and the fact that the sheriff was threatening Whorley with a contempt citation. Wilt and Shaw assured him "not to worry about it as they would handle it." Whorley also testified he lied at Orkin's instruction in his deposition and in answers to interrogatories by claiming that he could not remember the Bowens, their home or selling the exterminating contract to them.

Bowen testified that after he discovered what Orkin had done during the previous trial he was "surprised," "shocked" and that "it really dampened me down . . . I was really shocked about it . . . it hurt me, it really hurt me deep . . . I have always believed in the integrity of the court . . . and when one company put itself over a court then I think people should come forward and let them know what this company is doing because they can be doing it to somebody else, and that's the reason I'm here this morning." When asked, on cross-examination, if he was suing because it made him mad, appellee stated that while Orkin's actions made him mad and outraged, he brought the suit to punish Orkin because he believed in the integrity

of the courts and he felt Orkin was putting itself above the courts. He further stated he was suing "on the principle of the thing."

While the conduct of Orkin's employees is totally reprehensible and constitutes a clear-cut case of obstruction of justice which indubitably will not be condoned by this court, the appellee did not prove his case under OCGA § 51-12-6 which sets forth the measure of damages for injury to peace, happiness, or feelings. The Georgia courts do not recognize "outrage" as a tort. *Ga. Power Co. v. Johnson*, 155 Ga. App. 862, 863 (274 SE2d 17) (1980). Damages may be awarded only when the defendant's actions are " 'so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff.' *Georgia Power Co. v. Johnson*, 155 Ga. App. 862, 863 (274 SE2d 17) (1980)." *Thomas v. Ronald A. Edwards Constr. Co.*, 163 Ga. App. 202, 203 (293 SE2d 383) (1982). Appellant's proof of damages do not meet this standard. Accordingly, we are constrained to reverse the jury verdict and hold that the trial court erred in denying appellant's motions.

*Judgment reversed. McMurray, C. J., and Sognier, J., concur.*

DECIDED NOVEMBER 19, 1984 —
REHEARING DENIED DECEMBER 5, 1984 ▮▮▮▮▮▮▮▮

*Malberry Smith, Jr., H. Sol Clark*, for appellant.
*Adam P. Cerbone, Thomas M. Cerbone*, for appellee.