71529, 71530. SANDERS et al. v. BROWN et al.; and vice versa
(two cases).
(343 SE2d 722)

CARLEY, Judge.

The Sanders and the Brown families were, at one time, adjoining landowners and there was a longstanding dispute between the two families. On May 31, 1983, the patriarch of the Brown family died. On June 7, 1983, the Brown property was purchased at a foreclosure sale by appellant-defendant Sanders Farm Service, Inc. (SFS). Two individual members of the Sanders family, appellant-defendant John Sanders, Sr. and his son, John Sanders, Jr., collectively own all of the stock of SFS. The Brown family remained on the property for several weeks after the foreclosure sale. The five plaintiff-appellee members of the Brown family (the Browns) subsequently filed a multi-count tort complaint, naming SFS and both the Sanders father and son as defendants. The case was tried before a jury and a verdict was returned in favor of the Browns as to several of their tort counts and in favor of the Sanders and SFS as to others. Thereafter, the trial court granted a motion for judgment n.o.v. as to John Sanders, Jr. but de-

nied the motion as to appellants John Sanders, Sr. and SFS. In Case Number 71529, appellants Mr. Sanders, Sr. and SFS appeal from the entry of judgment on the verdict. In Case Number 71530, the Browns cross-appeal from the judgment and the grant of the motion for judgment n.o.v. as to John Sanders, Jr.

*Case Number 71529*

1. Count III of the complaint alleged that between the date of the foreclosure sale and the date the Browns finally vacated the property, the Sanders "purposely, intentionally, maliciously, outrageously, and with a conscious indifference to the rights of the [Browns] inflicted severe emotional distress upon [them]." The alleged tortious conduct was a series of acts committed by the Sanders while the Browns still maintained their residence on the property after the foreclosure. For the alleged tortious acts, the only damages sought by the Browns were those provided in OCGA § 51-12-6. As to this count, the jury returned a general verdict in varying sums in favor of each of the Browns. The trial court's failure to grant the motion for judgment n.o.v. is enumerated as error.

OCGA § 51-12-6 "does not create a cause of action for injury to peace, feelings or happiness but prescribes the measure of recovery where such a cause of action exists. [Cit.]" *Westview Cemetery v. Blanchard*, 234 Ga. 540, 544 (216 SE2d 776) (1975). Thus, unless the Sanders committed a tortious act, with the result that the Browns suffered emotional distress, there can be no recovery. That the Browns suffered emotional distress does not, without more, demonstrate that the Sanders committed a tort. The Browns were, after the foreclosure, tenants at sufferance and subject to summary dispossession. See generally *Remy v. Citicorp &c. Fin. Center*, 159 Ga. App. 726, 727 (285 SE2d 76) (1981). Accordingly, whatever acts were committed by the Sanders after the purchase of the property must be balanced against the Browns' status as tenants at sufferance in continued possession.

Under the existing circumstances, the Browns "had no right to the possession of the premises or the occupancy of the house. . . . But it does not follow from this that the real owner of the property, or his agents or employees, had the right forcibly to eject [them] from the house, either directly . . . or indirectly. . . ." *Moseley v. Rambo*, 106 Ga. 597, 606 (32 SE 638) (1898). "In this State, . . . the exclusive method of regaining possession of rented premises is the method prescribed by law, and if the landlord resorts to a different method he does so at his peril." *Lanier v. Kelly*, 6 Ga. App. 738, 739-740 (65 SE 692) (1909). See also *Entelman v. Hagood*, 95 Ga. 390 (22 SE 545) (1895). After the foreclosure, the Sanders did not institute formal le-

gal proceedings to dispossess the Browns and there is evidence that certain acts of the Sanders made the Browns' continued occupancy unpleasant or inconvenient. There is not, however, any evidence to authorize a finding that the Sanders, either directly or indirectly, sought forcibly to eject the Brown family and their property from their former residence. Compare *Entelman v. Hagood*, supra; *Moseley v. Rambo*, supra. So long as the Sanders did not physically invade or disturb the continued actual habitability of the residence itself, their mere presence anywhere on and about the property would not constitute a trespass thereon and was not a legal wrong as against the Browns. This is true even though, under the circumstances, it is understandable that the Browns found that presence excessive, unwarranted, emotionally disturbing and harassing. See *Ellenberg v. Pinkerton's, Inc.*, 130 Ga. App. 254 (202 SE2d 701) (1973). Possession of the property was being shared and the Browns' continued possession was at sufferance. "The body, reputation, and property of the citizens are not to be invaded without responsibility in damages to the sufferer. [Cit.] But outside these protected spheres, the law does not yet attempt to guard the peace of mind, or the happiness of every one by giving recovery of damages for mental anguish for a violation produced by a mere moral wrong. If the mental pain and anguish results from mere violation of a mere moral obligation, there can be no recovery. [Cits.]" *Anderson v. Fussell*, 75 Ga. App. 866, 869 (44 SE2d 694) (1947).

There is evidence that, on one occasion, the fuses were removed from a pump apparently located in one of the outbuildings on the property. The result was that the nearby residence was without water for several hours. While they were without water, the Browns were clearly inconvenienced. However, there is no evidence that the act of removing the fuses was accomplished for no legitimate good-faith purpose. The pump itself no longer belonged to the Browns. The testimony was that, while in the pumphouse for a legitimate purpose, one of the Sanders had removed the fuses in the belief that the pump was malfunctioning and that disabling it was necessary to prevent its ultimate destruction. The Sanders had the right to preserve their property. There is insufficient evidence to authorize a finding that the intent in disabling the pump could only have been to cause emotional distress to the tenants at sufferance in the nearby house. Cf. *Investment Securities Corp. v. Cole*, 186 Ga. 809 (199 SE 126) (1938); *Lawrence v. Atlanta Gas-Light Co.*, 49 Ga. App. 444 (176 SE 75) (1934). " 'While we are not familiar with the tort of "outrage," Georgia does recognize a cause of action for intentional infliction of emotional distress. [Cit.] However, in those cases where recovery has been authorized for intentional infliction of emotional distress, the defendant's actions were so terrifying or insulting as naturally to humiliate, em-

barrass or frighten the plaintiff. [Cits.]' [Cit.]" (Emphasis omitted.) *Hodges v. Tomberlin*, 170 Ga. App. 842, 845 (319 SE2d 11) (1984). Under the evidence, the single act of disabling the pump does not reach this level of "outrageousness." See generally *Orkin Exterminating Co. v. Bowen*, 172 Ga. App. 880 (324 SE2d 752) (1984). Nor was it such an "outrageous" invasion of the Browns' continued habitation of their former residence as would constitute an indirect forcible eviction therefrom. Compare *Entelman v. Hagood*, supra; *Moseley v. Rambo*, supra.

As to the minor appellee Karen Raquel Brown, however, there was evidence that, while standing in a garden, she was sprayed by insecticide from a passing farm machine. The evidence would authorize a finding that, under the circumstances, this conduct was wanton and wilful. See generally *Atlantic Steel Co. v. Cleaton*, 52 Ga. App. 502, 506 (183 SE 827) (1935). Accordingly, although no physical injury or pecuniary loss was alleged or proven, she was authorized to recover damages pursuant to OCGA § 51-12-6. See generally *Capitol T.V. Svc. v. Derrick*, 163 Ga. App. 65 (293 SE2d 724) (1982). "If 'mental pain and suffering' is not accompanied by physical injury or pecuniary loss, recovery is allowed only if the conduct complained of was 'malicious, wilful, or wanton.' [Cit.]" *Westview Cemetery v. Blanchard*, supra at 544. The incident would not, however, be a source of recovery for the mental distress of any of the other Browns. "Georgia follows the 'impact rule' which requires that defendant's conduct must result in actual bodily contact to the plaintiff except under circumstances where the wilful act was directed against the plaintiff. Here, . . . there was no 'impact' inflicted on [any of the other Browns] nor was there any wilful act . . . directed toward [them]." *Howard v. Bloodworth*, 137 Ga. App. 478-479 (224 SE2d 122) (1976). See also *Strickland v. Hodges*, 134 Ga. App. 909, 913 (216 SE2d 706) (1975). The act in question was directed only toward appellee Karen Raquel Brown. Accordingly, the incident provided a source of recovery of damages pursuant to OCGA § 51-12-6 only for the child herself, not for her relatives. See *Southern R. Co. v. Jackson*, 146 Ga. 243 (91 SE 28) (1916).

Remaining alleged acts of "outrageous" conduct on the part of the Sanders directed toward appellee Carl E. Brown and the other members of the Brown family, individually and collectively, have been considered. None authorized a finding of the intentional infliction of emotional distress or a recovery, under any legal theory, of damages pursuant to OCGA § 51-12-6. See generally *Miller v. Friedman's Jewelers*, 107 Ga. App. 841 (131 SE2d 663) (1963); *East River Savings Bank v. Steele*, 169 Ga. App. 9 (311 SE2d 189) (1983). "Where the mental pain and anguish result from a wanton and wilful wrong which is a violation of a legal right or duty owed to the plaintiff

although unaccompanied by a physical injury or monetary loss, recovery can be had for mental pain and anguish; but, if the mental pain and anguish result from mere violation of a mere moral obligation, there can be no recovery." *Atkinson v. Bibb Mfg. Co.*, 50 Ga. App. 434, 435 (178 SE 537) (1934). As to Count III, it was error to deny the motion for judgment n.o.v. as to all of the Browns, with the sole exception of appellee Karen Raquel Brown.

2. Counts V and VI of the Browns' complaint were also predicated upon the insecticide spraying incident involving appellee Karen Raquel Brown. For the reasons already discussed in Division 1, neither the child's mother nor her brother were authorized to recover for their emotional distress resulting from having witnessed the incident. Accordingly, as to those two appellees, the denial of the motion for judgment n.o.v. as to Counts V and VI is likewise reversed.

3. SFS enumerates the denial of its motion for directed verdict. The contention is that there was no evidence that the alleged tortious acts were committed by anyone acting in the capacity of its agent. By virtue of our previous holdings, the only remaining acts at issue are an alleged conversion of personal property, which served as the basis for a verdict in favor of appellee Carl E. Brown on Count I of the complaint, and the insecticide spraying incident, which served as the basis for a recovery by appellee Karen Raquel Brown. The evidence shows that appellant John Sanders, Sr. was the causative factor in those two acts. The evidence also shows that he was present on the property at the time those incidents occurred in his ostensibly legitimate representative capacity as an agent or officer of the new corporate owner. Both incidents involved agricultural machinery or equipment. " '[I]f a servant or employee, while engaged in the business of his master, makes a slight deviation for ends of his own, the master remains liable when the act was so closely connected with the master's affairs that, though the servant may derive some benefit from it, it may nevertheless fairly be regarded as within the course of his employment.' [Cits.]" *Limerick v. Roberts*, 32 Ga. App. 755 (124 SE 806) (1924). "To bar a recovery it must appear that the mission was purely personal, disassociated from any business of the master. [Cit.]" *Hunter v. A-1 Bonding Svc.*, 118 Ga. App. 498, 501 (164 SE2d 246) (1968).

It was not error to deny SFS's motion for directed verdict.

4. The giving of a charge on general damages is enumerated as error, the contention being that there was no evidence to authorize it. The charge was authorized in connection with Count I, wherein appellee Carl E. Brown sought damages for conversion of his personal property. See generally *Ambort v. Tarica*, 151 Ga. App. 97 (258 SE2d 755) (1979); *Alexander v. Holmes*, 85 Ga. App. 124, 126 (1b) (68 SE2d 242) (1951).

5. Appellants urge that it was error to enter judgment insofar as the verdict awarded an unauthorized double recovery of damages for emotional distress. This enumeration stems from the fact that the insecticide spraying incident was a material allegation in several counts of the Browns' complaint. As to Count III, the incident was only one of a series of alleged tortious acts for which all of the Browns sought damages pursuant to OCGA § 51-12-6. We have previously held, however, that only appellee Karen Raquel Brown was authorized to recover such damages and that, notwithstanding the series of alleged tortious acts, she could recover only on the basis of the insecticide incident. Count V of the complaint purported to comprise a separate and independent claim. As to that count, appellee Karen Raquel Brown sought yet again to recover damages pursuant to OCGA § 51-12-6, but based only upon allegations concerning the spraying incident. The jury returned a $45,000 verdict in favor of appellee Karen Raquel Brown as to Count III and a verdict for $1,000 as to Count V. It is clear that insofar as each verdict represents a potential recovery of damages pursuant to OCGA § 51-12-6 for the same tortious conduct, both cannot stand. See generally OCGA § 9-2-4.

In cases wherein there has been a double recovery as the result of pursuit of inconsistent remedies, the general rule is to require that an election be made as between the two recoveries. See generally *UIV Corp. v. Oswald*, 139 Ga. App. 697 (229 SE2d 512) (1976). However, the potential double recovery in the instant case is not the result of the pursuit of inconsistent remedies. It results from the pursuit of the *same* remedy, a cause of action in tort for damages pursuant to OCGA § 51-12-6, by pleading the *same* factual predicate, the insecticide spraying incident, in *two separate* counts. Thus, there are two separate verdicts by the same jury, differing greatly in the amount of damages awarded, either of which would be authorized only as the result of exactly the same tortious conduct.

"[W]hen the amount of the verdict is a matter to be measured by the enlightened conscience of a jury, then it is of the utmost importance that the jury shall not have been in the least mislead as to the principles upon which their verdict is to be founded. . . ." *Ransone v. Christian*, 49 Ga. 491, 503 (1873). The difference in the amount of the verdicts returned in favor of Karen Raquel Brown appears to result from the fact that Count III was pled and then apparently tried and submitted to the jury under the theory that any and all of the alleged acts attributed to either of the Sanders in Count III might authorize a recovery for emotional distress by any and all of the Browns individually and collectively. As discussed previously, however, with the exception of the insecticide spraying incident, none of those alleged acts afforded a legal basis for a recovery for emotional distress by *any* of the Browns. Therefore, the $45,000 lump sum general award made to

appellee Karen Raquel Brown on Count III could represent an award for only such acts as would not support a legal recovery of damages pursuant to OCGA § 51-12-6, whereas the verdict as to Count V represents the only award of such damages as was authorized by the law and the evidence. On the other hand, the jury may have split an award between the two counts and, therefore, at least some part or all of the award as to Count III represents authorized damages for the insecticide incident, whereas the verdict as to Count V represents only a further token gesture on the part of the jury. The manner in which the case was pled and tried simply makes it impossible to determine exactly which part and what amount of the overall general verdict is authorized and which part and what amount is not. Under one construction of the entire verdict, to afford appellee Karen Raquel Brown the opportunity to elect to recover on Count III rather than on Count V would clearly be unfair to the appellants. Under the other, to reverse the judgment as to Count III and affirm that as to Count V would potentially be unfair to appellee Karen Raquel Brown. Under these circumstances, the only disposition which is clearly fair to all concerned is to reverse the judgment for appellee Karen Raquel Brown as to both Counts III and V and to order that a new trial be conducted which is "entirely free from any extraneous circumstance." *Corbett & Taylor v. Connor,* 11 Ga. App. 385, 391 (75 SE 492) (1912). Since "it is impossible to determine whether part or all of the award was [authorized] . . . the case must be reversed [as to Counts III and V] and a new trial had" solely as to the issue of the recovery by appellee Karen Raquel Brown of damages pursuant to OCGA § 51-12-6 based upon the insecticide spraying incident. *Wayco Enterprises v. Crews,* 155 Ga. App. 775, 777 (272 SE2d 745) (1980). It is so ordered.

6. Remaining enumerations of error have been rendered moot or harmless by virtue of our previous rulings. The verdict as to Count I awards appellee Carl E. Brown compensatory and punitive damages for conversion of his personal property. See generally *West Ga. Pulpwood &c. Co. v. Stephens,* 128 Ga. App. 864, 869 (3) (198 SE2d 420) (1973). Appellants have asserted no independent meritorious basis for reversing the entry of judgment on that verdict and the judgment as to Count I is affirmed. The entry of judgment on the verdict awarding damages pursuant to OCGA § 51-12-6 as to appellee Karen Raquel Brown on Counts III and V is reversed with direction that a new trial be conducted. In all other respects, the judgment is reversed with direction that judgment n.o.v. be entered for appellants John W. Sanders, Sr. and SFS.

*Case Number 71530*

7. Evidence of prior disputes between cross-appellees Sanders and their neighboring landowners other than the Browns was not erroneously excluded from evidence. The conduct ultimately at issue in the instant case was that between the Sanders in their capacity as new owners of the property and the Browns as tenants at sufferance in continued possession. Prior disputes and incidents between the Sanders and their other neighbors were essentially irrelevant to the issue of whether the conduct of the Sanders in their new capacity was tortious and malicious as against the Browns in their equally new capacity as tenants at sufferance. Compare *Thompson v. Moore*, 174 Ga. App. 331 (329 SE2d 914) (1985), aff'd in part and reversed in part, 255 Ga. 236 (336 SE2d 749) (1985). That which might constitute a tortious and malicious act as against the rights of a neighbor would not, if undertaken by an owner on his own property, necessarily constitute a tortious and malicious act as against a tenant at sufferance on that property.

8. The trial court's grant of judgment n.o.v. to cross-appellee John W. Sanders, Jr. is affirmed. The evidence shows that he had no personal involvement with either the conversion or insecticide spraying incident. The evidence shows no basis for finding him jointly or vicariously liable for those incidents.

*The judgment in Case Number 71529 is affirmed in part and reversed with direction in part. The judgment in Case Number 71530 is affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED MARCH 11, 1986 —
REHEARING DENIED MARCH 28, 1986 — 

*John C. Pridgen, Gary C. Christy*, for appellants.
*James W. Hurt, Thomas H. Hyman, Charles M. Jones*, for appellees.