## MOSELEY v. RAMBO et al.

1. A power of sale in a mortgage given to secure a debt in part usurious may be exercised at least to the extent of collecting the principal with lawful interest; certainly so when it is exercised with the acquiescence of the mortgagor.

2. When such a mortgage secures a debt maturing by instalments, and the parties by a written agreement substitute a new amount for the total indebtedness, which relieves the transaction of usury, and fix the time for its payment on a given day, if payment be not then made the power of sale may be exercised.

3. Where such power authorizes the mortgagee to convey the premises to the purchaser as attorney in fact for the mortgagor, but the mortgagee conveys in his own name, it does not pass a legal title, but, if in other respects properly executed, passes an equitable title which constitutes a good defense, so far as damage to the freehold is concerned, to an action brought by the wife of the mortgagor, whose sole interest in the property is under a voluntary conveyance from her husband made after the execution of the mortgage.

4. In view of the evidence in the record, there was no abuse of discretion in granting a second new trial.

Argued December 16, 1898. — Decided March 4, 1899.

Action of trespass. Before Judge Reid. City court of Atlanta. May term, 1898.

*James K. Hines* and *M. A. Hale*, for plaintiff.
*J. D. Rambo, G. K. Looper* and *Clyde L. Brooks*, for defendants.

LEWIS, J. Mattie Moseley alleged in her petition that W. H. Whitley, Lawrence R. Brooks, and S. D. Rambo unlawfully broke and entered her dwelling-house located on a certain lot, describing it, made a great noise and disturbance therein, tore the roof from the house of petitioner, defaced and broke the doors of her dwelling, left the same uncovered, whereby her household furniture and goods, which were then and are still stored in said house, were greatly damaged by the constant rains which have ever since fallen thereon. She alleged that the trespass was accompanied by aggravating circumstances both in the act and intent, and that she had been put to an expense of fifty dollars in employing counsel to bring the suit. She alleged her damages, in consequence of the wrongs complained of, to be one thousand dollars. It appeared on the trial of the case that H. D. Moseley, the original owner of the

house and lot in question, created a mortgage on the same to secure a debt he was due to W. M. Jones, evidenced by forty-eight promissory notes, each for the sum of eight dollars, the first due on November 27, 1893, and one on the first day of each successive month thereafter until all were paid.    This mortgage was executed on October 27, 1893, and provided that if the debt was not promptly paid in accordance with the tenor and effect of the notes, then W. M. Jones, the mortgagee, would be authorized to sell at public outcry to the highest bidder for cash the property mortgaged, for the purpose of paying the indebtedness and the expenses of the proceedings, after first advertising the time and place of sale, etc.    The mortgage further constituted Jones the attorney in fact of the mortgagor to make to the purchaser or purchasers of the property at such sale good and sufficient titles in fee simple to said property, thereby divesting out of the mortgagor all right, title, or equity that he may have in and to the property mentioned, and vesting the same in the purchaser or purchasers at the sale. After the execution of this mortgage, H. D. Moseley, the mortgagor, made a voluntary conveyance of the property to his wife, Mattie Moseley, the plaintiff in this suit.    There was default in the payment of the notes, and it seems that a difference arose between the mortgagor and mortgagee as to the amount due thereon.    This difference was settled through their attorneys, and it was agreed that one hundred and eighty-five dollars should represent the indebtedness due on the notes; and that unless this sum was paid by January 1, 1895, the mortgagee should have a right to bring about a sale in accordance with the power conferred upon him in the mortgage.    The property was duly advertised for sale in February, 1894, and was sold the following March, when Rambo, one of the defendants, became the purchaser at the price of one hundred and twenty-five dollars.    It seems that at the time of sale the mortgagor and his wife were still living in the house on the premises, and it was afterwards agreed between the mortgagor and the agent of Rambo, the purchaser at the sale, that the mortgagor would pay rent to Rambo for his occupancy of the premises.    It does not appear that any amount, or term of rental, was agreed upon.    Rambo

lived in Cobb county, and left the property in the care of his agent, C. L. Brooks, the brother of one of the defendants, who is not sued in this case, and C. L. Brooks employed Whitley in August, 1894, to repair the house, and especially to place thereon a new roof. Whitley accordingly went out to the premises with Lawrence R. Brooks, one of the defendants. The evidence is decidedly conflicting as to what connection Lawrence R. Brooks had with the tortious acts complained of, whether he took any part in directing the repairs, or whether he simply went there for the purpose of showing the contractor where the house was, and having otherwise no connection whatever with the matter. The testimony is uncontradicted, however, that he was not the agent of Rambo to look after this property. The carpenter tore the roof, or at least one side of it, from the house, and left it in that condition some three weeks, during which time it was constantly raining, and the household furniture of the plaintiff was thereby injured and damaged. It appears that no one was at the house when the carpenter commenced his work of tearing the roof therefrom, but the plaintiff arrived soon after the roof was taken off, and knew of the exposed condition of her furniture, and, it seems, took no steps to prevent the consequent injuries which resulted from rains of several days. There is no testimony in the record directly connecting the defendant Rambo with this alleged trespass. He was residing in Marietta, Ga., and it does not appear he was present, or gave any direction to his agent that the house should be repaired during its occupancy by the plaintiff in the manner in which it was done by the carpenter. In fact the evidence tends to show that he knew nothing about plaintiff claiming title to the premises, nor of the alleged wrongs that had been done her, until after the institution of the suit. The jury returned a verdict for the plaintiff for $160. The defendants' motion for a new trial was granted. It seems there have been two verdicts for the plaintiff in this case, and this is the second grant of a new trial. To this judgment granting the second new trial the plaintiff in error excepts; and also in her bill of exceptions alleges error in certain rulings of the court made pending the trial.

1. On the trial of the case plaintiff offered testimony to show that the mortgage which had been introduced in evidence by the defendants was infected with usury, and was made as a part of a usurious contract, and to evade the laws against usury; that the only consideration of the notes was $175, and that therefore $209 thereof constituted a usurious interest charged on the loan.   To the ruling of the court sustaining defendants' objection to the introduction of this testimony the plaintiff excepted.   It is insisted by counsel for plaintiff in error, that the effect of usury in the mortgage was to render absolutely void *the power of sale* therein conferred upon the mortgagee; and that therefore no title whatever was conveyed to the purchaser at the sale under this power.   We do not think this position is tenable.   Usury does not render a mortgage void in Georgia.   Manifestly, had the mortgagee in this case proceeded to foreclose his mortgage by a regular proceeding in the superior court, a plea of usury could not have prevented him from obtaining a judgment for the principal of the debt, and the legal rate of interest thereon.   The only effect of such a plea would have been to reduce the amount sued for by the amount of usury which the testimony showed to exist.   Usury, therefore, not rendering void the contract, we can not see how it renders void the *power of sale* conferred by the contract.   This power of sale is nothing more than a remedy given to the creditor by the debtor for enforcing the payment of the debt without resorting to the courts for this purpose.   Its evident intention was to save both time and expense in the collection of the debt, should there be default in its payment.   It is a remedy, therefore, by contract intended to substitute the remedy by law, should the creditor see fit to avail himself of the power conferred upon him by his debtor. The adoption of the contract remedy and a sale thereunder practically has the same effect as if there had been a sale by a judgment of foreclosure.   This court has accordingly held, in *Mutual Co.* v. *Haas*, 100 *Ga.* 111, that a power of sale in a mortgage becomes a part of the security for the debt, and, being conferred for the purpose of effectuating the same, is not revocable, either by the mortgagor, or by the rendition of a

judgment against him in favor of another creditor; and that where the power was exercised by selling the land, this was equivalent to a sale under the foreclosure of the mortgage by a court of competent jurisdiction, and a bona fide purchaser at the sale obtained title free from the lien of judgments junior to the mortgage, though rendered before the exercise of the power. Had the statute rendered the mortgage void on account of usury, the case would have been entirely different, for the whole contract being made void, the infectious evil would necessarily have permeated all its terms and conditions, and destroyed every power therein conferred. It was accordingly held by this court in *Pottle* v. *Lowe*, 99 *Ga.* 576, that where a deed executed by a borrower to secure a debt infected with usury purported not only to convey title to the seller, but also to confer upon him a power of sale, it was void, and therefore ineffectual either to pass title, or to create a.valid power of sale. As Justice Lumpkin argues, in the opinion delivered by him in that case, "The power of sale was part and parcel of the usurious transaction, and must stand or fall with the deed by which it was created." In the case of *Whatley* v. *Barker*, 79 *Ga.* 790, the mortgagor sought to enjoin the sale of property under a power of sale given in the mortgage, on the ground of usury in the debt. It was there decided that the court would not interfere without an offer on plaintiff's part to do equity by tendering to the lender the amount actually due for principal and interest. Clearly, then, this decision recognizes the right of a creditor, when such a power is conferred upon him by the mortgagor, to exercise the same, at least for the purpose of collecting the principal and legal rate of interest due on his debt, and that the courts will not interfere in the matter on the ground that the debt is infected with usury, unless there is an offer to pay what is legally due. As far as our investigation has extended, the authorities outside of this State on the subject in question uniformly sustain the principle announced in the .case last above cited. In 2 Jones on Mortgages, (3d ed.) § 1808, it is declared: "Where usury does not invalidate the mortgage, a sale under the power will not be enjoined by reason of it, unless the debtor brings into court the principal and

the legal interest due." This text is sustained by the decisions in Powell *v.* Hopkins, 38 Md. 1; Eslava *v.* Crampton, 61 Ala. 507; Walker *v.* Cockey, 38 Md. 75. In Powell *v.* Hopkins, 38 Md. 1–2, it is decided that "The exaction of usurious interest does not invalidate the mortgage or affect the power to sell given in the mortgage." It is true this court has decided that a waiver of homestead in a note or other instrument tainted with usury is inoperative. We do not think the principle upon which this ruling is based at all in conflict with our views in this case. Justice Bleckley, in *Tribble* v. *Anderson*, 63 *Ga.* 54–5, says that "while the waiver of homestead is not a conveyance, it is enough in the nature of a quitclaim title to be subject to the general rule ordained by statute against passing any kind of title to property for a usurious purpose or as part of a usurious contract. The homestead right is a right in property, and to waive it in favor of a creditor is substantially the same thing as to convey it away — the same, certainly in respect to putting the debtor in the power of the creditor." The power of sale in a mortgage is not a conveyance, nor is it anything in the nature of a quitclaim title. It is merely a power given to the creditor to sell the property without resorting to the courts for this purpose; and the deed which the mortgagee makes to the purchaser under such sale is no more infected with usury than would the sheriff's deed be under a foreclosure. We think, therefore, the court did not err in refusing to admit testimony upon the subject of usury.

2. Plaintiff assigns error upon the following charge of the court: "If it is true that the money was not paid by the first day of January, 1895, if it is true that this indebtedness of $185 represented the indebtedness mentioned in the original mortgage, and if it is true that Jones was to hold the mortgage with all his rights under it as to the power of sale and its enforcement, changed only by the amount of the debt and its maturity, referred to in the written contract executed November 27, 1894, then Jones would have the right after the first day of January, 1895, if the money was not paid, to proceed to exercise his rights under the power of sale in the mortgage, and the indebtedness would be due so as to authorize him

to proceed under the power of sale." We can see no error in this charge. The effect of the contract was not to waive any right under the mortgage, so far as the power of sale was concerned, but simply to establish the amount that was legally due on the notes. We think that the mortgage itself, together with the power of sale thereunder, would be security for this amount, regardless of any express understanding between the parties that this power in the mortgage should continue to be operative. At the time the mortgagee proceeded to sell, even if he had made no other agreement with the mortgagor than that contained in the notes, we think he would clearly have had the right to proceed to foreclose the mortgage for those of the notes then due, which amounted to $128 principal, besides interest; and we see no reason why he did not have a like right to enforce the collection of the amount due by exercising the power of sale given him in the mortgage. It was claimed that the charge complained of was error, because the contract of November 27, 1894, did not contain any power of sale authorizing Jones to sell this property if the sum of $185 was not paid by January 1, 1895; and because such authority can not be given by parol, as claimed by the defendants; nor can the terms in the power of sale in a mortgage on real estate be changed or modified by parol. Even if there was anything in this contention, the record fails to show that the agreement touching the amount due on this mortgage and the sale of the property was not in writing. The agreement was not made a part of the brief of evidence, but it seems was examined by witnesses in open court, and they testified about the same from the stand. The reply, however, to the contention of plaintiff in error is that the sale was had by virtue of the power granted in the mortgage itself. If the mortgagee had a right, without any agreement, to sell in order to enforce the payment of so much of the debt as was actually due, certainly an agreement as to what was due and a limitation of time as to its payment would not affect this power of sale, whether the same was made verbally or in writing.

3. On the trial plaintiff objected to the deed from Jones to the defendant Rambo being introduced in evidence, on the

ground that the deed purported to have been made by Jones
under a power of sale contained in a mortgage, and the same
was signed by W. M. Jones alone, and not by H. D. Moseley,
the mortgagor, by his attorney in fact, W. M. Jones.   The in-
troduction of this deed was further objected to on the ground
that, at the time the power of sale was exercised, it did not ap-
pear that the debt was due; and on the further ground, it was
shown that the power of sale was not exercised by Jones per-
sonally, but was exercised by his attorneys when said Jones
was not present.   As to the last ground mentioned, the evi-
dence fails to show that Jones was not present at the time of
the sale; and besides, under the ruling of this court in *Palmer*
v. *Young*, 96 *Ga.* 246, "The conduct of such a sale is purely a
ministerial act, does not in any manner affect the real execu-
tion of the power, and may be performed by the mortgagee
through the instrumentality of an auctioneer or any similar
agent."   The second ground, to the effect that the debt was
not due at the time the power of sale was exercised, has al-
ready been considered.   The mortgage does not confer upon
Jones, the mortgagee, the power to sell this property and make
a conveyance thereof in his own name.   He is constituted by
the terms of the mortgage an attorney in fact for the mort-
gagor, and as such is empowered to convey the property.   We
think, therefore, that the criticism by counsel for plaintiff in
error as to the manner in which this deed was executed is well
taken.   It was made by Jones in his individual name.   It
should have been made in the name of the mortgagor, in whom
was the title, by his attorney in fact, Jones.   The deed, there-
fore, from Jones to Rambo, the purchaser, does not convey a
perfect legal title in fee simple to the premises in dispute. But
it does not follow from this, as contended by counsel for plain-
tiff in error, that no interest in the property has been acquired
by the purchaser.   In support of this contention, counsel for
plaintiff cites the case of Speer *v.* Hadduck, 31 Ill. 439.   It
was there decided, that where a mortgage contained a power
of sale authorizing the mortgagee to sell the premises, and as
the attorney of the mortgagor to execute deed to the purchaser,
he could only convey title as the attorney of the mortgagor,

and by using the name of his principal in the conveyance; and that a deed in the mortgagee's own name as grantor did not pass the legal title. That was an action of ejectment, a plain remedy at law, in which the plaintiff could recover only upon the strength of his own legal title. There is no intimation in that case that the plaintiff did not have an equitable interest in the property, notwithstanding the defective manner in which the deed was executed, and that he would not have had a right in court to enforce that equity against any person who did not have a paramount right to the premises in dispute. In Mulvey v. Gibbons, 87 Ill. 368, it was held that where a mortgage confers such a power of sale and conveyance on the mortgagee, a deed in the mortgagee's name only may be regarded as not conveying a good title in fee simple at law, but it will pass an equity to the grantee. To the same effect see Gibbons v. Hoag, 95 Ill. 47 (6); 2 Jones on Mortgages (3d ed.), § 1891.

The plaintiff in this case claims under a voluntary conveyance from her husband, made after the execution by him of the mortgage in question. Obviously she took subject to this mortgage, and to any rights acquired thereunder by the mortgagee or his assigns. Among these rights was the equitable title obtained by Rambo, one of the defendants in this case, by virtue of his becoming a purchaser of the property at the sale. The plaintiff, therefore, had no rights whatever to the property as against the equitable interest of this defendant. It necessarily follows, then, that he could set up such an interest as a defense to an action of trespass brought against him for any alleged damages that may have been committed by him, or his agent, to the real estate. If any injury was committed to the freehold, the plaintiff was not damaged thereby, for the simple reason it was not her property. It follows, therefore, that there was no error in admitting testimony which showed a complete equitable title in Rambo to the property in dispute. This illustrated his right and good faith in entering upon the premises, and also showed that there could be no recovery against him for any damage done the freehold. Our conclusion as to the law controlling this case, embodied in the first

three headnotes, is strengthened by the fact that it does not appear from the record that the mortgagor, H. D. Moseley, objected to the sale that was had under the power conferred by the mortgage, but, on the contrary, acquiesced in and ratified the same by agreeing to pay rent to the purchaser at this sale.

4. It follows from the above views, that the plaintiff in this case had no right to the possession of the premises or the occupancy of the house. It appears from the record that her husband continued to occupy the same after the sale, but acquiesced in the sale by agreeing to pay to the purchaser rent for the premises, there being no amount of rent stipulated, and no time being fixed for the expiration of the term of rental. The husband was a mere tenant at will, and plaintiff simply occupied the position of being the wife of a tenant at will, living with her husband at the time of the alleged trespass. But it does not follow from this that the real owner of the property, or his agents or employees, had the right forcibly to eject her from the house, either directly, by seizing her goods and placing them out of doors, or indirectly, by forcibly, and against her consent, tearing the roof from over her head, and thus forcing her to abandon the structure that had in this way been made uninhabitable. In the case of *Entelman* v. *Hagood*, 95 *Ga.* 390, it was decided that if a landlord forcibly and violently ejects a tenant and his goods from rented premises, he is liable to the latter in an action of trespass, although the tenant be holding over beyond his term, be in arrears for rent, and has received legal notice to quit. Applying that ruling to this case, it would follow that a forcible seizure of this house without the consent of the occupant, and wantonly or negligently tearing therefrom the roof, and unnecessarily leaving exposed to the weather the personal goods of such occupant, especially if the purpose of such act was forcibly to evict her from the premises, would render the perpetrator liable in damages for a trespass. It is as much a wrong to drown one out of house as it is to drive one out. But the evidence in this case tended strongly to show that the plaintiff, by the exercise of ordinary diligence, could have avoided, to some extent at least, the actual damages she sustained in consequence of the alleged wrongs complained of.

We do not mean to say that in such a case the injured party is necessarily restricted to a recovery of only the damage actually sustained. There may be in such cases aggravating circumstances in the act or intention of the trespasser, which would authorize a recovery though no injury to person or property had occurred. This, of course, would be a question for the jury under all the facts and circumstances of each particular case. It appears, however, that the plaintiff recovered an amount in excess of the highest proved value of the goods that she claims were injured. From the brief report we have made of most of the material facts developed by the evidence in the case, it will be seen that if there is any testimony at all under which the defendant Rambo could be held liable, even for her actual damages, to say nothing of general damages to which she might be entitled, such testimony is certainly very meager, and furnishes a frail and uncertain basis upon which to support the verdict against him. He would not, on account of being owner of the property, be liable for a wilful act of trespass committed by a contractor, though employed by the general agent of the owner, when such act is done in his absence, and without his knowledge or consent. In view of these facts, taken in connection with the entire testimony in the case, we do not think the judge below abused his discretion in granting a new trial, though the second verdict for the plaintiff was thereby set aside.

Besides the general grounds in the motion for a new trial, various errors of law were complained of, relating particularly to the court's failure to give in charge certain principles which were contended to be applicable to the present case. We deem it unnecessary to notice these seriatim, for the decision embodied in the headnotes, and what we have written thereon, covers the controlling questions at issue.

*Judgment affirmed. All the Justices concurring.*