**In re GOULDING PLACE DEVELOPERS, INC.,**
Debtor.

**SENTRY BANK AND TRUST COMPANY, Movant,**

v.

**GOULDING PLACE DEVELOPERS, INC., Respondent.**

**Bankruptcy No. A88–08915.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 13, 1989.

Frank L. Wilson, III, Dillard, Greer, Westmoreland & Wilson, P.C., Atlanta, Ga., for debtor/respondent.

Mark A. Kelley, Kitchens, Kelley, Gaynes, Huprich & Shmerling, Atlanta, Ga., for movant.

## CONTESTED MATTER

STACEY W. COTTON, Bankruptcy Judge.

## ORDER

Before the court is the motion of Sentry Bank and Trust Company ("Sentry") for relief from the automatic stay. This matter is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(G). The court's findings and conclusions are as follows:

On August 1, 1988, Bill Lee Spencer and Patricia Ann Spencer individually filed a joint Chapter 11 petition in this court, Case No. 88–06662. Movant, Sentry, was duly scheduled as a creditor. Thereafter, on October 14, 1988, Goulding Place Developers, Inc. ("debtor") filed its Chapter 11 petition. Movant was also scheduled as a creditor of the corporate debtor. Bill Lee Spencer is the president and 50% shareholder of the debtor corporation. His wife, Patricia Ann Spencer, owns 12.5% of the stock, and his three children, Sheryl L. Schroeder, Troy L. Spencer, and Dawn L. Spencer, each own 12.5% of the corporate stock. (Transcript of the February 21, 1989 hearing on Sentry's motion for relief from the automatic stay, page 50, hereinafter "Transcript, p. # ").

The corporate debtor is in the business of investing in and developing real estate. It owns two assets, one being undeveloped real property located at 109 Goulding Place, consisting of approximately 10.8094 acres ("the Goulding property"),[1] and the

1. The Goulding property is part of a tract of     property consisting of approximately twenty

other being a checking account at First American Bank with a balance of less than $100.00. (Transcript, p. 51). Spencer individually purchased the Goulding property in 1979 and, for estate planning purposes, he made a capital contribution of the property, which was unencumbered, to the debtor corporation in 1982. (Transcript, p. 68, 72). In exchange, Spencer received stock in the debtor corporation. (Transcript, p. 52).

In his individual capacity, Mr. Spencer obtained a loan from Sentry in 1986 by executing a promissory note, which was secured by a second priority deed to secure debt on property owned by Spencer located at 1002 Canton Street, Roswell, Georgia ("the Canton Street property"). (Transcript, p. 76). The parties stipulated at the hearing that Spencer is indebted to Sentry in the amount of $250,000.00, plus interest from June 1, 1988. (Transcript, p. 48). The indebtedness as to First Union National Bank of Georgia ("First Union"), holder of a first priority deed to secure debt on the Canton Street property, is approximately $248,000.00. (Transcript, p. 63).

As a condition of renewing Spencer's loan in 1987, Sentry required that this corporate debtor guarantee Spencer's personal debt and secure it by a second priority deed to secure debt on the Goulding property. (Transcript, p. 76–78). CrediThrift of America, Inc. ("CrediThrift") is the holder of a first priority deed to secure debt on the Goulding property. (Transcript, p. 52–53, 73–75). The amount of that indebtedness is approximately $107,000.00. (Transcript, p. 10). At the time of renewal, Sentry knew that the corporate debtor, Goulding, had no income with which to pay the Spencer loan and that payment was to be made by Spencer. (Transcript, p. 76–78).

Mr. Spencer's testimony is undisputed that, at the time of the joint Chapter 11 filing, the Sentry loan was not in default. (Transcript, p. 80). Spencer's Chapter 11 filing apparently resulted in a technical default in Sentry's note. As a result, Sentry's counsel sent Goulding, the corporate guarantor, a ten-day notice of default letter dated October 5, 1988. This letter stated that Spencer was in default under the note and demanded that Goulding, as guarantor, immediately pay all amounts due thereunder.[2] In an effort to preserve the equity in the Goulding property, debtor Bill Lee Spencer, as president, caused the corporate guarantor, Goulding, to file its Chapter 11 petition on October 14, 1988. (Transcript, p. 80). Spencer testified that he filed this corporate Chapter 11 in order to protect the equity in the Goulding property for the benefit of the corporation, its creditors, his family, and their creditors. (Transcript, p. 80).

On December 6, 1988, First Union filed a motion for relief from stay in the Spencers' individual Chapter 11 case with regard to the Canton Street property. At the hearing on this motion, the parties stipulated that the current fair market value of this property was greater than First Union's indebtedness. By order entered February 13, 1989, this court denied First Union's motion for relief from stay since the court found that First Union's interest in the Canton Street property was adequately protected by the excess equity in the property. The court approved the Spencers' agreement to make periodic payments of $1,600.00 per month to First Union.

Spencer testified to an appraisal on the Canton Street property in the sum of $718,000.00, although he personally valued the Canton Street property at approximately $850,000.00. (Transcript, p. 63). Sentry presented no evidence and did not contro-

---

acres located in Roswell, Georgia. The Goulding property is located approximately in the center of the tract of property and surrounds a restored historical residence.

2. The letter, a copy of which is attached to Sentry's motion for relief from stay as Exhibit "C", stated in pertinent part as follows:

Please be aware that the obligations of Mr. Spencer under his renewal Note dated June 1, 1988 are in default. Mr. Spencer is currently in a Chapter 11 bankruptcy proceeding. Accordingly, Sentry hereby demands immediate payment of all amounts due from Goulding Place Developers, Inc. in its capacity as guarantor of Mr. Spencer's obligation.

vert the values of the Canton Street property. Accordingly, the court determines, for purposes of this motion, the current fair market value of the Canton Street property is $718,000.00.

Danny Ives, an appraiser with Pendley and Pendley Appraisers and Consultants [3], was qualified as an expert and testified that he appraised the Goulding property and valued it at $1,350,000.00. (Transcript, p. 87). Spencer testified that in his opinion the value of the Goulding property was $2,161,880.00.[4] (Transcript, p. 64). Sentry presented no evidence and did not controvert the appraisal value of the Goulding property. Accordingly, for purposes of this motion, the court finds the testimony of Mr. Ives to be credible and determines that the current fair market value of the Goulding property is $1,350,000.00.[5]

As noted, Sentry holds second priority liens on the Canton Street and Goulding properties to secure its loan. The following chart clearly illustrates that Sentry is substantially oversecured and is thus adequately protected:

|  | Fair Market Value |
| --- | --- |
| Canton Street property | $ 718,000.00 |
| Goulding property | 1,350,000.00 |
| Total value | $2,068,000.00 |
| LESS: | |
| (1) First Union first lien on Canton Street property | (248,000.00) |
| (2) CrediThrift first lien on Goulding property | $ (107,000.00) |
| Net value securing Sentry loan | $1,713,000.00 |
| LESS: | |
| Sentry loan | (250,000.00) |
| EQUITY CUSHION | $1,463,000.00 |

Spencer testified that the corporate debtor has never had any employees, other than its corporate officers, although it has also employed independent contractors. (Transcript, p. 54, 72–73). Since 1985, debtor has not engaged in any business activity. (Transcript, p. 54). Debtor's creditors consist of the two secured creditors, CrediThrift and Sentry, and three unsecured creditors, Mr. Spencer in his individual capacity; Spencer Services, Inc., a corporation owned by Mr. Spencer; and Land Development Analysts, which holds a disputed $1,500.00 claim for appraisal services. (Transcript, p. 54 and debtor Goulding's Chapter 11 schedules of creditors).

Sentry's motion requests relief from the stay, or alternatively, dismissal of debtor's case. At the hearing, Sentry's counsel elected not to pursue the motion to dismiss but requested relief from the stay. (Transcript, p. 94). Because of the substantial equity cushion, Sentry makes no contention that its interest is not adequately protected.[6]

---

3. The transcript of the February 21, 1989 hearing incorrectly identifies the appraising firm as "Finley and Finley Appraisers and Consultants." (Transcript, p. 85).

4. Spencer testified that, in his opinion, the value of the Goulding property was approximately $200,000.00 an acre. [$200,000.00 × 10.8094 acres = $2,161,880.00]. (Transcript, p. 64). He stated that a recent rezoning of the Goulding property had substantially increased its value. The rezoning occurred around the time that this corporate debtor filed this Chapter 11 petition. (Transcript, p. 70–71).

5. Debtor Goulding scheduled its property as having a market value of $378,000.00. Spencer also acknowledged that one of three appraisals on the Goulding property valued the Goulding property at $378,000.00. (Transcript, p. 70).

6. Although no such protection is required, the court, by separate order entered March 7, 1989, has authorized the corporate debtor to make monthly payments of $1,455.00 to CrediThrift, holder of the first priority deed to secure debt on the Goulding property, as was proposed in a consent order. In addition, in another order, the court has also authorized the debtor to make monthly payments of $1,250.00 to Sentry, holder of the second priority deed to secure debt on the Goulding property, as was similarly proposed in a consent order. These orders specifically provide that these payments are not for adequate protection of these substantially oversecured creditors but are in recognition of debtors' ability to make interim monthly payments.

■ Sentry bases its motion for relief from stay on the grounds that the corporate Chapter 11 constituted a bad faith filing under the factors enunciated by two recent Eleventh Circuit decisions in *Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393 (11th Cir.1988) (Chapter 11 case dismissed as a bad faith filing) and *Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.)*, 825 F.2d 296 (11th Cir.1987) (Chapter 11 case dismissed as a bad faith filing). An abusive filing constitutes "cause" under 11 U.S.C. Section 362(d)(1) for granting relief from the automatic stay. *Phoenix Piccadilly*, 849 F.2d at 1394, (citing *Natural Land, supra*). The issue before the court is whether this Chapter 11 petition was filed in bad faith.

In examining the issue of a bad faith filing, the Eleventh Circuit emphasized that the bankruptcy court should consider all of the facts and circumstances as they relate to each particular case. In doing so, this corporate debtor's Chapter 11 case must be considered in light of the prior individual Chapter 11 filing. It is apparent to this court that, rather than placing this corporation in Chapter 11 to avoid filing individually, the Spencers, in good faith, sought to reorganize individually. They only brought their corporation into Chapter 11 when Sentry used the individual filing and absence of a codebtor stay as grounds to declare a default as a preliminary to foreclosing upon the Goulding property. This corporate debtor filed a Chapter 11 to preserve its very substantial equity and to pursue financial rehabilitation through reorganization.

While rejecting the argument that, just because there is equity in a debtor's property, a bankruptcy court can never dismiss a case for a bad faith filing, *Phoenix Piccadilly* requires the bankruptcy court to consider all facts and circumstances in determining whether a bad faith filing has occurred. The Eleventh Circuit in *Phoenix Piccadilly*, 849 F.2d at 1394–95, and *Natu-*

*ral Land*, 825 F.2d at 298, has enumerated a nonexhaustive list of *circumstantial* factors to be considered in examining the issue of bad faith. Although many of these factors are present here, the court will consider them as they apply to this debtor, as follows:

1) *Debtor has only one asset in which it does not hold legal title.*

In the present case, the Goulding property and a bank account with a balance under $100.00 are the debtor's only assets. At the time of its guarantee of Spencer's indebtedness to Sentry, the corporate debtor owned only the Goulding property. Sentry obviously was looking to Spencer for payment, with the Goulding property as additional collateral to secure that payment.

2) *Debtor has few unsecured creditors whose claims are small in relation to the claims of secured creditors.*

Other than the disputed claim of Land Development Analysts, there are no non-insider unsecured creditors in the Goulding case. Most of the stock of the corporate debtor is property of the Chapter 11 bankruptcy estates of the Spencers individually.[7] Therefore, any proceeds from the disposition of the Goulding property would benefit the individual estates and their creditors. The remaining stock is owned by the Spencers' children who have agreed to contribute any equity in the Goulding property to their parents' creditors in their individual Chapter 11 case[8]. (Transcript, p. 58, 62) (*See* Bill Lee Spencer and Patricia Ann Spencer's plan of reorganization in Case No. 88–06662, filed February 10, 1989). Thus, there is an unsecured creditor body which will obtain a substantial benefit from the equity in the Goulding property upon its sale and distribution.

3) *Debtor has few employees.*

Debtor Goulding has never had any employees, other than its corporate officers. It has employed independent contractors as maintenance workers. (Transcript, p. 54, 72–73).

---

**7.** The Spencers own 62.5% of the stock in this debtor corporation.

**8.** The Spencers' children own 37.5% of the stock in this debtor corporation.

4) *Debtor's property is the subject of a foreclosure action as a result of arrearage on the debt.*

Sentry's counsel stipulated that the Goulding property was *not* the subject of an actual foreclosure when the corporate debtor's Chapter 11 filing occurred.[9] (Transcript, p. 82). Sentry's debt was created in 1986 as the primary obligation of Bill Lee Spencer. The corporate debtor, Goulding, became a guarantor of this indebtedness when renewed in 1987. A joint Chapter 11 petition was filed by Spencer and his wife on August 1, 1988. Spencer's testimony is undisputed that, at the time of his filing in August 1988, he was not in default and was, in fact, current in his payments to Sentry. (Transcript, p. 80). The court thus concludes that the October 5, 1988 Sentry default letter was sent to this corporate debtor because Spencer had individually filed a joint Chapter 11 petition.

In Chapter 11, unlike in Chapter 13, there is no codebtor stay. *See* 11 U.S.C. Section 1301. As a result, the codebtor corporation, if unable to pay, could only protect its assets by (1) obtaining an injunction in the individuals' joint case under 11 U.S.C. Section 105(a) prohibiting Sentry from proceeding against the codebtor corporation, or (2) filing its own Chapter 11. The Chapter 11 filing would seem to be the more reasonable and logical course to be pursued. In fact, had Spencer sought a protective injunction under Section 105(a) and Bankruptcy Rule 7065, it is very likely that it would have been denied. The courts have generally been reluctant to extend

such injunctive protections to guarantors or sureties. *Diaconx Corp. v. Hamilton Bank (In re Diaconx Corp.)*, 69 B.R. 343, 346–48 (Bankr.E.D.Pa.1987); *Martin v. Norwest Bank Kalispell (In re Kalispell Feed and Grain Supply, Inc.)*, 55 B.R. 627, 629–30 (Bankr.D.Montana 1985).

5) *Debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in a pending state court action.*

In the present case, the deed to secure debt contains a power of sale provision which authorizes a nonjudicial foreclosure of the Goulding property. The power of sale in Georgia [10] permits a creditor holding a deed to secure debt to enforce the payment of a debt without utilizing the judicial process.[11] *See Moseley v. Rambo*, 106 Ga. 597, 600, 32 S.E. 638 (1899). *See also Gurr v. Gurr*, 198 Ga. 493, 505–10, 32 S.E.2d 507, 514–17 (1944). In this regard, one commentator has noted as follows: "The Georgia system of nonjudicial foreclosure has often been questioned as failing to provide adequate notice and opportunity to be heard, and as permitting a sale without a prior judicial determination of the debtor's liability." G. Pindar, *Georgia Real Estate Law and Procedure*, Volume 2, Section 21–72 n. 1, page 351 (3rd edition 1986).[12] Unlike the Goulding debtor, the debtors in *Phoenix Piccadilly* and *Natural Land* had this opportunity for a prior judicial determination. Those cases involved *judicial* foreclosures in pending state court actions.

**9.** The debtors in *Phoenix Piccadilly*, 849 F.2d at 1394, and *Natural Land*, 825 F.2d at 298, filed their Chapter 11 petitions the day before a state hearing seeking appointment of a receiver for the subject property and the same day that a state court entered its foreclosure order on the property respectively. No such allegations or showings have been made in the case at bar.

**10.** The Goulding property is located in Roswell, Georgia.

**11.** Georgia also permits judicial foreclosure; however, that remedy is seldom used because exercising the power of sale is easier and more available to the grantee of a security deed. *See*

G. Pindar, *Georgia Real Estate Law and Procedure*, Volume 2, Section 21–91, page 377 (3rd edition 1986).

**12.** During the thirty-day period immediately following the date of sale, evidence may be presented at a hearing to determine the adequacy of the sale price and the legality of the notice, advertisement, and regularity of the sale. However, the procedure of judicial confirmation of a sale under power is not required unless the holder of the security deed seeks a deficiency judgment against the grantor for any remaining unpaid indebtedness. O.C.G.A. Section 44–14–161; *See also Dupree v. Turner*, 99 Ga.App. 332, 108 S.E.2d 171 (1959).

6) *The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of debtor's secured creditors to enforce their rights.*

The discussion in factors # 4 and # 5 also applies here. Mr. Spencer, debtor's president and 50% stockholder, testified that the corporation filed this Chapter 11 petition because Sentry was preparing to institute foreclosure proceedings. The petition was filed to preserve this debtor's equity in the Goulding property. (Transcript, p. 80).

7) *Lack of a realistic possibility of an effective reorganization.*

The Goulding property is prime property in a rapidly developing area. With the substantial equity in the property, it appears realistic that this debtor corporation can affect a feasible plan of reorganization within a reasonable time. The corporate debtor and the related individual debtors are entitled to the opportunity to attempt a reorganization. Such may be accomplished through one or more ways, such as the substantial income of the individuals, refinancing, or the development or sale of this property or other properties.[13]

8) *Whether the debtor is seeking to use the bankruptcy provisions to create and organize a new business, not to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business.*

This debtor corporation filed this Chapter 11 petition in order to preserve its substantial equity in the Goulding property. There is absolutely no evidence that it was seeking to use the bankruptcy provisions to create and organize a new business. This case does not involve the so-called "new debtor syndrome" in which property is transferred to a newly created entity on the eve of foreclosure.

9) *Whether the debtor appears to be merely a "shell" corporation.*

Clearly, the present case is not comparable to *Natural Land.* In that case, two individuals facing foreclosure of their property set up a "shell" corporation, transferred the property to the corporation and filed a Chapter 11 petition to avoid the imminent foreclosure. *Natural Land,* 825 F.2d at 297–98. Here, the Goulding property was transferred to the debtor corporation in 1982, well before there was any debt on the property. The present case does not indicate any attempt by the individuals to hide behind a "shell" or corporate veil to avoid a personal Chapter 11 filing. Thus, *Natural Land* is further distinguishable.

10) *Whether the debtor was created, or the subject property transferred to the debtor, for the sole purpose of obtaining protection under the automatic stay of Chapter 11.*

The previous discussion with respect to factor # 9 also applies here.

This corporate debtor's Chapter 11 case and the joint case of Bill Lee Spencer and Patricia Ann Spencer are closely related. This very interrelationship further differentiates them from *Phoenix Piccadilly* and *Natural Land.* The corporate debtor obtained the Goulding property in 1982, some seven years ago. Mr. Spencer made all payments on his debt to Sentry, although it was secured by the second lien on the Goulding property. In fact, this corporate debtor has never had regular income with which to service this indebtedness. (Transcript, p. 76–78).

Furthermore, as previously noted, the Goulding property surrounds a restored historical residence. This residence is valued at $1,500,000.00 and is the home of Mr. and Ms. Spencer and an asset of their individual estates. Debtor's appraiser, Danny Ives, and Spencer both testified that if the stay were lifted and Sentry foreclosed on the Goulding property, it would have

---

**13.** The Spencers have filed a proposed plan of reorganization in their joint case which provides for interim monthly payments of $1,455.00 and $1,250.00 to CrediThrift and Sentry respectively. The plan also contemplates the sale of the individuals' property and the corpo- rate debtor's Goulding property with distribution of those proceeds to the Spencers' individual creditors after payment in full of the secured creditors. Thus, payment of Sentry's claim is contemplated from first available funds from either personal or corporate assets.

an adverse effect on the value of the historical residence, a major asset of the individual estates. (Transcript, p. 67–68, 88–89). This would materially and adversely impair the reorganization efforts of Mr. and Ms. Spencer and their ability to repay their creditors, including Sentry. Further, to permit Sentry to foreclose would only serve to permit this creditor to receive an unconscionable windfall at the expense of both the corporate debtor, the individual debtors and their other creditors.

■ The actions of the debtor corporation in filing this case do not evidence an overt intent to inconvenience or frustrate creditors' rights beyond the congressionally permitted limits authorized by Chapter 11. There is no "smoking gun."[14] As the court in *In re North Redington Beach Assocs.*, 91 B.R. 166 (Bankr.M.D.Fla.1988) emphasized, the "real test" of a bad faith filing is "the presence of honest intention of the Debtor and some real need and real ability to effectuate the aim of the reorganization even if this involves the total liquidation of the assets." 91 B.R. at 169. The court finds that this debtor had an honest intention in filing this Chapter 11 petition, and, in so doing, it was attempting to preserve its substantial equity in the Goulding property. This substantial equity provides a real and present means and ability to enable this debtor to propose an effective reorganization plan. For all of the foregoing reasons, the court concludes that the corporate debtor's Chapter 11 petition was filed in good faith. Accordingly, it is

ORDERED that Sentry's motion for relief from the automatic stay is DENIED.

IT IS SO ORDERED.

14. *Phoenix Piccadilly,* 849 F.2d at 1395.