**In re CLINTON FIELDS, INC., Debtor.**

**Bankruptcy No. 93–53621.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

May 24, 1994.

Wesley J. Boyer, Macon, GA, for debtor.

T. Baron Gibson, II, Macon, GA, for movant.

Patricia Garrett, U.S. Trustee's Office, Macon, GA, for U.S. Trustee.

### MEMORANDUM OPINION

JAMES D. WALKER, Bankruptcy Judge.

This matter is before the Court on Motion For Relief From Stay Or To Dismiss Or Convert filed by Louise Y. Pulliam Kelley ("Movant"), a secured creditor in this Chapter 11 case. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(G). The Court held a hearing on this motion on March 30, 1994. Based on the evidence presented at the hearing and the arguments of counsel the Court denies Movant's request. These findings of fact and conclusions of law are published in compliance with Fed.R.Bankr.P. 7052.

### FINDINGS OF FACT

The Debtor's sole asset is the real estate in which Movant asserts a security interest. Movant seeks a determination from this Court that the Debtor filed its petition under Chapter 11 in bad faith, thereby entitling Movant to relief from stay or dismissal of this case.

On February 2, 1990, Debtor purchased from Movant 153 acres of undeveloped land in Gray, Georgia. Of the Eight Hundred Sixty Thousand Dollar ($860,000.00) purchase price, Movant financed Six Hundred Forty-Five Thousand Dollars ($645,000.00). As part of the financing, Debtor executed a note in favor of Movant in the amount of $645,-000.00 plus interest at the rate of 12 percent. The note provided that Debtor would pay to Movant the sum of Fifty–Six Thousand Two Hundred Thirty–Seven Dollars and Fifty–Five Cents ($56,237.55) semi-annually.

Debtor made payments on the note as follows:

| November, 1990 | $ 61,612.00 |
| May 6, 1991 | $ 37,647.75 |
| June 27, 1991 | $331,000.00 |

The June 27, 1991, payment represents the entire proceeds from the sale of 18.767 acres and 4.05 acres which were zoned for commercial use.

After the sale, the parties refinanced the original note. The new note was for Three Hundred Twenty–One Thousand One Hundred Twenty Dollars ($321,120.00) plus interest at the rate of 12 percent. The new note provided for an interest only payment due August 2, 1991, followed by 17 equal semi-annual installments of Thirty Thousand Six Hundred Forty–Nine Dollars and Twenty–Four Cents ($30,649.24) beginning February 2, 1992. Debtor's payment history on the new note is as follows:

| August 2, 1991 | Interest Only |
| November 23, 1992 | $30,649.24 |
| August 20, 1993 | $ 4,192.58 |

As a result of Debtor's default, Movant declared the entire balance of the note due on November 10, 1993. On December 6, 1993, the day of the foreclosure sale, Debtor filed its petition under Chapter 11.

The remaining property is zoned as residential. The Department of Transportation is planning to build a bypass around the city of Gray which would run directly through the property. When this bypass is completed, the value of the property is likely to increase. The property is unique in two respects. It is the only developable tract in its area, and it is located near the local high school.

The property remaining after the sale of the two commercial tracts is still raw land. However, a plan to connect utilities has been accepted by the city of Gray. Additionally, a plan of development has been drawn by the

Debtor, and bids have been accepted from contractors for initial site work.

Debtor's sole shareholder, Mr. William Conn, testified that delays by the Department of Transportation in building the bypass and his personal unavailability due to chemotherapy treatment prevented timely payments under the note. Mr. Conn also testified that Movant had agreed to accept payments of interest only until the promised bypass could be built. Mr. Conn said he invested over Three Hundred Thousand Dollars ($300,000.00) into the Debtor Corporation and proposed to make all adequate protection payments to Movant under the Debtor's plan of reorganization. Movant did not dispute these assertions.

The parties have stipulated that the outstanding balance of principal and interest on the note as of the date of Debtor's filing is Three Hundred Seventy–Six Thousand Six Hundred Forty–Six Dollars and Ten Cents ($376,646.10). Uncontested evidence placed the value of the remaining property at approximately Five Hundred Thousand Dollars ($500,000.00). Although originally contested in documents filed with the Court, Movant conceded at the hearing that Debtor possesses equity in the property.

Movant is Debtor's sole secured creditor. The only unsecured creditors in this case are debts to the IRS for unpaid taxes in the amount of Five Thousand Dollars ($5,000.00) and an insider claim of a former equity holder of the Debtor in the amount of Ninety Thousand Dollars ($90,000.00). Debtor has no employees. Mr. Conn's efforts in behalf of Debtor have been uncompensated.

The Debtor's plan provides for payment of Movant's claim as follows:

(a) The holder of the allowed secured claim in of Class 4 [Movant] shall retain the liens collateralizing the claim and be paid in full, as of the effective date, in 240 equal monthly installments of principal and interest, with interest calculated at 8 percent per annum. All unpaid interest and principal shall be due on the 60th anniversary of the effective date.

(b) After confirmation, the Debtor shall be entitled to sell portions of the property,

free and clear of the first deed, by paying the Class 4 claimant [Movant] a release price. The release price shall be determined by multiplying the gross sales price of the portion to be sold by a fraction, the numerator of which is the unpaid balance of the Class 4 claim as of the date of sale and the denominator of which is the total number of acres collateralizing the claim, prior to the proposed sale. Sales under paragraph (b) shall not effect the amortized payment under paragraph (a) of this section.

### CONCLUSIONS OF LAW

■ Movant petitions this Court for relief from stay pursuant to 11 U.S.C. § 362(d), or in the alternative, dismissal of the Debtor's case pursuant to 11 U.S.C. § 1112. Relevant portions of those sections of the Bankruptcy Code provide as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . .

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if . . .

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (Law Co-op.1994).

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including . . .

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; [or]

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under chapter 123 of title 28 [28 U.S.C. §§ 1911 et seq.]

11 U.S.C. § 1112(b) (Law Co-op.1994).[1]

Because the Court finds that Debtor possesses equity in the subject property, relief from stay pursuant to section 362(d)(2) is not at issue. Additionally, the Court finds that Movant's interest in the property is protected by both its equity cushion and Mr. Conn's willingness to make adequate protection payments during the pendency of this case. Furthermore, the property does not appear to be diminishing in value, and Movant is receiving interest on its claim. Therefore, adequate protection exists within the meaning of 11 U.S.C. § 362(d)(1).

The Court also finds that none of the factors provided in section 1112 of the Bankruptcy Code are present at this time in this case. However, these findings do not signal an end to the Court's inquiry. Movant contends that Debtor filed its petition in bad faith, and for that reason, Movant is entitled to relief from stay, or, in the alternative, the dismissal of Debtor's Chapter 11 case as a matter of law.

█ Both sections 362(d) and 1112 of the Bankruptcy Code provide that relief from stay or dismissal may be granted for "cause". A debtor's lack of good faith in filing a bankruptcy petition constitutes "cause" for relief from stay pursuant to section 362(d)(1) of the Bankruptcy Code. *Phoenix Piccadilly Ltd. v. Life Insurance Co. of Virginia (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir.1988) citing *Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.)*, 825 F.2d 296 (11th Cir.1987). Similarly, a debtor's lack of good faith is grounds for dismissal of the Chapter 11 case under section 1112 of the Bankruptcy Code. *Phoenix Piccadilly* at 1394, citing *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir. 1984). Therefore, a finding of bad faith on Debtor's part would entitle Movant to either stay relief or dismissal.

█ "[T]here is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *Phoenix Piccadilly* at 1394, citing *Albany Partners* at 674.[2] In the context of a single asset real estate Chapter 11 case, the Eleventh Circuit has enunciated the following factors as evidence of a debtor's bad faith:

(i) The Debtor has only one asset, the Property, in which it does not hold legal title;

---

1. The factors relevant to dismissal of a case under section 1112 of the Bankruptcy Code are not exhaustive and are merely given as examples of "cause" for dismissal. The legislative history to section 1112 of the Bankruptcy Code states "The court will be able to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." H.R.Rep. No. 595, 95th Cong. 2nd Sess. p. 406 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6362.

2. For a cogent discussion of good faith issues in the context of a single asset real estate Chapter 11 case, see H. Miles Cohn, *Good Faith And The Single–Asset Debtor*, 62 Am.Bankr.L.J. 131 (1988).

(ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

(iii) The Debtor has few employees;

(iv) The property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

*Phoenix Piccadilly* at 1394.

The above factors are not exhaustive, and no single factor is determinative of a debtor's good faith.[3] *Natural Land* at 298, citing *In re Levinsky*, 23 B.R. 210, 217 (Bankr. E.D.N.Y.1982). As the court in *Home Federal Savings v. Club Candlewood Assoc., L.P. (In re Club Candlewood Assoc., L.P.)*, 106 B.R. 752, 757 (Bankr.N.D.Ga.1989) stated "... it is not the per se existence of many of such indicia, standing alone, which necessarily mandate a finding of bad faith. It is the entire context of the circumstances which compel the inference of abuse of the court's jurisdiction."

 Movant urges that the presence of the factors outlined in *Phoenix Piccadilly* should result in a finding of bad faith as a matter of law. This assertion is incorrect as a matter of law. The factors cited by both the Eleventh Circuit and other courts are guidelines for the exercise of the Court's sound discretion. Bad faith in the filing of a bankruptcy petition is a finding of fact not subject to any per se approach. *Club Candlewood* at 756.

Upon review of the relevant factors cited by the court in *Phoenix Piccadilly* as well as the "entire context of the circumstances" which lead to the filing of Debtor's petition,

this Court finds that Debtor's petition was not filed in bad faith.

The factors cited by the Eleventh Circuit in *Phoenix Piccadilly* apply to the present case as follows:

*1. The Debtor has only one asset, the Property, in which it does not hold legal title.*

The real estate property at issue in this case is the sole asset of the estate. Movant holds a deed to secure debt as to that property. However, Movant originally transferred the property to Debtor with the knowledge that Debtor intended to develop the raw land into commercial and residential lots which would be offered for sale. Movant has been apprised of both the progress of the development including the problems it has faced with the delay in building the bypass highway and Mr. Conn's personal health problems. The fact that the real estate is the Debtor's only asset is consistent with the Debtor's stated business purpose, the development of real estate.

The Court also notes that Debtor has equity in the property. That fact, standing alone, is not sufficient to transform a petition filed in bad faith into one filed in good faith. *Phoenix Piccadilly* at 1395. However, this Court finds that, while not determinative, the presence of equity provides both a sound basis for reorganization and substantial evidence of the Debtor's good faith intent to reorganize.

*2. The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors.*

The Debtor has only two unsecured creditors: the IRS and a former equity holder of Debtor. Taken together, these claims are roughly one third of Movant's claim.

Debtor's plan of reorganization provides that Movant's claim will be paid in full in 60 months with interest calculated at 8 percent per annum. The unsecured creditors of the estate are also to be paid in full. Mr. Conn has pledged Twenty-five Thousand Dollars

---

**3.** For additional factors which are relevant to a debtor's good faith, see *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.)*, 779 F.2d 1068, 1072 (5th Cir.1986); *Natural Land Corp. v. Baker Farms,*

*Inc. (In re Natural Land Corp.)*, 825 F.2d 296, 298 (11th Cir.1987); *Sentry Bank and Trust Co. v. Goulding Place Developers, Inc. (In re Goulding Place Developers, Inc.)*, 99 B.R. 493, 498 (Bankr. N.D.Ga.1989).

($25,000.00) for the development of the property and debt service under the plan.[4]

### 3. The Debtor has few employees.

Debtor has no employees other than Mr. Conn, the principal of Debtor. He does not receive a salary for his services. Debtor, through Mr. Conn, proposes to hire various contractors to develop the land to the point where the residential lots are ready for sale to individual purchasers.

### 4. The property is the subject of a foreclosure action as a result of arrearages on the debt.

The property was scheduled for a foreclosure sale on the day the Debtor filed its petition. The parties do not dispute that Debtor was in arrears on its payments under the note created June 27, 1991. However, the Court takes note of the fact that Movant agreed to accept interest only payments on the note until the promised bypass was completed. This is relevant not for the purpose of determining if Movant waived any payments called for by the note, but rather as to Debtor's payment history and its treatment of the subject debt. It appears that the parties anticipated the necessity for flexible repayment terms.

### 5. The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action.

The deed to secure debt executed in favor of Movant contains a provision allowing a nonjudicial foreclosure of the subject property in the event of default. Movant initiated just such a nonjudicial foreclosure. These types of foreclosure proceedings are provided for under Georgia law. *Sentry Bank And Trust Co. v. Goulding Place Developers, Inc. (In re Goulding Place Developers)*, 99 B.R. 493, 497 (Bankr.N.D.Ga.1989) citing *Moseley v. Rambo*, 106 Ga. 597, 600 (1899). However, the court in *Goulding Place* noted that a debtor's resort to bankruptcy in such an instance is not evidence of bad faith. *Id.* at 497.

### 6. The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

Debtor filed its petition under Chapter 11 of the Bankruptcy Code on December 6, 1993, the day a foreclosure sale was to have taken place. The fact that the property was the subject of a nonjudicial sale is equally relevant to the issue of the timing of Debtor's petition. *Goulding Place* at 498. At the hearing on this matter, Mr. Conn testified that the reason for his filing the bankruptcy petition was so that he could get back on his feet after his chemotherapy treatment and pay off his creditors. This is not a case where the debtor seeks only to prevent foreclosure on the property and punish foreclosing creditors by resorting to any available means. Compare *Phoenix Piccadilly* at 1395. Rather, the Court is convinced that Debtor sincerely intends to reorganize.

Many courts have focused on elements which may indicate the presence of bad faith in a case. The absence of those factors would point courts to the conclusion that a debtor did not file its petition in bad faith. The decisions do not delineate positive factors which may be indications of good faith. I believe that the following factors, all of which are present in this case, are indicative of circumstances which may give rise to a debtor's legitimate motivation for Chapter 11 relief:

1. The secured creditor seeking relief is the seller of the property to the debtor;

2. The secured creditor has been the recipient of significant cash proceeds from the Debtor's efforts to sell a portion of the property;

3. The principals of the debtor have made a substantial capital investment into the property;

4. The debtor has formulated a specific plan for the development of the property prior to filing the Chapter 11 case;

---

4. Compare the case of *Home Federal Savings v. Club Candlewood Assoc., L.P. (In re Club Candlewood Assoc., L.P.)*, 106 B.R. 752, 754 (Bankr. N.D.Ga.1989) where the court found evidence of bad faith in the fact that the principals of the debtor refused to infuse the cash necessary to give the debtor any "meaningful" chance for reorganization.

5. The plan for development has been substantially implemented prior to filing the Chapter 11 case;

6. The cause of debtor's financial distress was unforeseen at the time of the financing and was beyond the debtor's immediate control;

7. The plan for development does not require substantial additional financing;

8. The plan for development does not depend upon additional speculative investment on the part of a subsequent developer/owner (the project is an "end use" development).

9. The debtor's failed efforts to reorganize may result in a windfall to the secured creditor.

10. The plan does not significantly extend the time for repayment of the debt beyond the original term.

In the present case, Movant is the original seller of the property. She was aware of its proposed use and was apprised of the problems the Debtor faced as the development progressed. Movant received all of the proceeds of the sale of the two commercial parcels in partial satisfaction of the debt. Mr. Conn in behalf of Debtor has invested considerable sums into the purchase and development of the property. Debtor has initiated a specific plan for the development of the property, and is poised to continue to implement that plan. The financial distress Debtor experienced was the result of unforeseeable delays with the Department of Transportation and Mr. Conn's chemotherapy. Mr. Conn is prepared to provide additional financing to complete the development. The property is to be sold as residential building lots.

In filing this case, Debtor proposes to extend the repayment of Movant's debt. The Court is mindful of Movant's original expectation as to the timing of the receipt of repayment of the principal. Delayed repayment of principal together with additional interest may be financially equivalent to a current pay out of a debt obligation. On the other hand, the liquidity of an asset is an aspect which is quite separate from its financially equivalent worth. In this case, Movant's personal financial circumstances and expectations, as compared to those of a financial institution, would be appropriate to consider. There is, however, no such evidence, and the Court is unaware of the extent, if any, to which Movant depends upon the cash flow from this investment for her day to day financial support.

It must be recognized that Movant decided to realize the benefit of this real property from a sale with owner financing rather than a sale for cash. In choosing the former, Movant entered into a financial transaction which has aspects and consequences which are to be reasonably anticipated in such a commercial setting. The debtor in this case, with the cooperation of the Movant, has made a serious effort to conclude the project and repay the loan. That effort has not yet succeeded. Neither has it failed. Instead, it hangs in the balance now dependent upon the rehabilitative grace provided by Chapter 11. We have not yet reached the stage where the confirmation of the plan can be considered. For now, the question to be decided is whether the Debtor's effort is one which was undertaken in bad faith.

In sum, although many of the factors evidencing bad faith cited by the court in *Phoenix Piccadilly* are present in this case, this Court can not mechanically treat such factors as determinative of bad faith. The facts of this case lack the aggravating elements which were present in *Phoenix Piccadilly*. Additionally, many of the factors which this Court believes are indicative of good faith are present in this case. Based on the foregoing, the Court finds that Debtor's petition was not filed in bad faith. The Debtor will be allowed to proceed to the confirmation stage, there to be tested again by standards which are much easier to define and much harder to satisfy.

An order in accordance with this memorandum opinion will be entered.